MOSELEY, HALLGARTEN,
ESTABROOK & WEEDEN,
INC., Plaintiff–Appellee,

v.

Bernard ELLIS, Defendant–Appellant.

No. 87–1066.

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1987.

Decided May 25, 1988.

As Amended June 13, 1988.

Bernard Ellis, Chicago, Ill., for defendant-appellant.

Mark R. Misiorowski, Goggin, Cutler & Hull, Chicago, Ill., for plaintiff-appellee.

Before COFFEY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

In this diversity action,[1] defendant-appellant, Attorney Bernard Ellis, appeals from the order of the district court denying his motion to vacate or modify the unanimous award of a New York Stock Exchange arbitration panel, and confirming the arbitration award in favor of the plaintiff-appellee, Moseley, Hallgarten, Estabrook & Weeden, Inc. (Moseley). We affirm.

### I.

Moseley is a Delaware corporation having its principal place of business in New York and is involved in the retail brokerage business, buying and selling securities for customers on account. Bernard Ellis and Albert Rossini, citizens of Illinois, formed a partnership and engaged Moseley to buy and sell securities on their behalf through an account under the name Ergo Asset Management, Inc. (Ergo Asset Management, Inc. was never incorporated under the laws of Illinois.) From December 1983 until February 1984, Ellis and Rossini purchased and sold securities through their account with Moseley. Ellis and Rossini paid for their acquired securities with checks drawn upon Bank Leumi, Chicago, Illinois, under the name Ergo Partners. In January 1984, Ellis issued a check to Moseley in the amount of $101,675.00 as payment for the purchase of certain securities. The check was returned marked "NOT SUFFICIENT FUNDS." Following the regulations of the Securities and Exchange Commission, Moseley sold the securities on the open market, but the sale resulted in a deficit account balance of $41,550.75. Moseley subsequently demanded payment from the partnership, to no avail.

On March 5, 1984, Moseley filed a complaint against Ellis and Rossini to recover money damages for the open account debt. On March 6, 1984, Rossini signed, in both an individual and partner capacity, a promissory note for the full debt. On April 11, 1984, Ellis filed an answer denying: (1) the existence of the partnership; (2) that he was a partner; and (3) any partnership or individual liability. Further, Ellis asserted as an affirmative defense that the dispute was subject to arbitration under the Rules of the Department of Arbitration, New York Stock Exchange, Inc.[2] On June 12, 1984, the district court entered a default judgment against Rossini for $38,420.02, the remaining amount of the partnership obligation (since Rossini previously tendered some $3,000).

On July 9, 1985, Ellis and Moseley executed a Uniform Submission Agreement assenting to submit their dispute to the Board of Arbitration, New York Stock Exchange, Inc. (Board). The Submission Agreement provided, *inter alia:*

"1. The undersigned parties hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers and all related counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the Constitution, Bylaws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization."

On the same date, Ellis sent the submission agreement, along with his claim letter, to the Board. The claim letter set forth a "request for arbitration of the claim that there existed a partnership." On August 22, 1985, Moseley submitted its reply and counterclaim to the Board. Moseley asserted that Ellis, as a general partner of Ergo Partners (or Ergo Asset Management, Inc.), was liable for the account deficit of $38,420.02. On September 26, 1985, the district court granted Ellis's motion to stay the proceedings, staying all matters relating to Ellis pending the arbitration.

On June 10, 1986, Ellis and Moseley presented their respective claims to a three-

---

**1.** "While the Federal Arbitration Act creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal question jurisdiction under 28 U.S.C. § 1331 or otherwise. *Moses H. Cone Memorial Hospital v. Mercury*

*Const. Corp.,* 460 U.S. 1, 25, n. 32, 103 S.Ct. 927, 942, n. 32, 74 L.Ed.2d 765 (1983)." *Southland Corp. v. Keating,* 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 861 n. 9, 79 L.Ed.2d 1 (1984).

**2.** The record does not contain references to any other arbitration rules.

member panel of arbitrators for the New York Stock Exchange. The arbitrators bifurcated the proceedings, initially limiting the presentation of evidence to the issue of the existence of the partnership and subsequently received evidence regarding the amount of Ellis's and the partnership's liability. The arbitration panel unanimously found that:

> "the claim of the Claimant [Ellis] be and is hereby in all respects dismissed, and have further determined that a partnership existed and claimant Bernard M. Ellis was a general partner in a partnership named Ergo Partners;
>
> And with regard to the counterclaim, have decided and determined that Claimant Bernard M. Ellis pay Respondent [Moseley] the sum of $32,000.00." [3]

On July 18, 1986, Moseley petitioned the district court to confirm the award, and Ellis filed a motion to vacate or modify the award pursuant to the federal Arbitration Act. 9 U.S.C. §§ 9, 10.

Specifically, Ellis asserted three grounds for vacating the arbitrators' decision pursuant to 9 U.S.C. § 10.[4] (1) that the arbitrators exceeded their authority in deciding the issue of the partnership's liability since the partnership itself had not submitted the issue of partnership liability to arbitration pursuant to the Uniform Partnership Act, Ill.Rev.Stat. ch. 106½, ¶ 9(3)(e);[5] (2) that the arbitrators exceeded their authority, rendering an award in favor of Moseley and against Ellis after the arbitrators limited the scope of the arbitration to the sole question of whether Ellis and Rossini were partners; and (3) that Ellis was denied due process since he was not allowed to present evidence relevant to the question of the partnership's liability. In the alternative, Ellis contended that the award should be modified pursuant to 9 U.S.C. § 11,[6] even assuming he was Rossini's partner because he "is only jointly liable for any debt owed

---

**3.** While Moseley alleged that Ellis owed $38,420.02 on the account debt, the arbitrator awarded Moseley only $32,000.00. The arbitrator did not explain (nor was he required to, as an arbitrator is not required to provide explicit findings) the discrepancy, and the parties do not dispute the *amount* of the arbitrator's award. But despite the arbitrator's silence on the issue, we do note that Ellis argued during the arbitration hearing that because Moseley improperly liquidated Ellis's account, Moseley had failed to mitigate its damages; thus, it is logical to infer that the arbitrator accepted Ellis's argument and reduced Moseley's award based on its failure to mitigate.

**4.** 9 U.S.C. § 10 provides:

"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that

a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators."

**5.** "9. Authority of Partner to Bind the Firm, etc.

(3) Unless authorized by the other partners, or unless they have abandoned the business, one or more but less than all the partners have no authority to:

(e) submit a partnership claim or liability to arbitration or reference."

Ill.Rev.Stat. ch. 106½, ¶ 9(3)(e).

**6.** "In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

9 U.S.C. § 11.

Moseley," and thus asserted that his "entire amount of ... liability is $16,000.00" rather than the $32,000.00 awarded by the arbitrators. (Appellant's Memo. of Law in Response and Opposition to Plaintiff's Petition and in Support of His Motion to Vacate or Modify Arbitrator's Decision, August 8, 1986). The district court denied Ellis's motion to vacate or modify the award and granted Moseley's motion to confirm the same. On appeal, Ellis asserts as grounds to vacate or modify the arbitration award: (1) that the arbitrators precluded him from presenting pertinent evidence regarding the question of partnership liability; (2) that the arbitrators exceeded their powers, having determined Ergo Partners' liability without all the partners' consent contrary to ¶ 9(3)(e) of the Uniform Partnership Act, Ill.Rev.Stat. ch. 106½, ¶ 9(3)(e); and (3) that his joint liability to Moseley was satisfied since Moseley received full payment from Rossini, a joint obligor.

## II.

■ The federal Arbitration Act, 9 U.S. C. § 1 *et seq.*, "establishes 'a federal policy favoring arbitration.'" *Shearson/American Express, Inc. v. McMahon,* — U.S. ——, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed. 2d 765 (1983)). The corollary to this federal bias in favor of arbitration is that "judicial review of an arbitration award is extremely limited." *E.I. DuPont de Nemours v. Grasselli Employees Independent Ass'n,* 790 F.2d 611, 614 (7th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986). Specifically, judicial review of a commercial arbitration award is limited by the Arbitration Act. Sections 10 and 11 of the Act set forth the exclusive grounds for vacating or modifying a commercial arbitration award. *See Shearson Hayden Stone, Inc. v. Liang,* 653 F.2d 310, 312 (7th Cir.1981) (Holding that "[w]e can set aside an arbitration award *only* on the grounds set forth in section 10 of the Federal Arbitration Act.") (emphasis added); *Tamari v. Bache Halsey Stuart, Inc.,* 619 F.2d 1196, 1198 n. 2 (7th Cir.), *cert. denied,* 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980) (Wherein we noted that "[o]ur power to set aside an arbitration award *is limited to* the grounds in 9 U.S.C. § 10.") (emphasis added); *see also Stroh Container Co. v. Delphi Industries, Inc.,* 783 F.2d 743, 749 (8th Cir.), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986) (Observing that sections 10 and 11 "have often been deemed the exclusive grounds for vacation or modification" of an arbitration award.); *LaFarge Conseils et Etudes, S.A. v. Kaiser Cement,* 791 F.2d 1334, 1338 (9th Cir.1986) (Stating that the "federal Arbitration Act provides the exclusive grounds for challenging an arbitration award within its purview.").[7] As we noted: "Arbitration is an alternative to the judicial resolution of disputes, and an extremely low standard of review is necessary to prevent arbitration from becoming merely an added preliminary step to judicial resolution rather than a true alternative." *Grasselli,* 790 F.2d at 614. Further, we are in the same position as the district court when it comes to reviewing an arbitration award; thus, we determine whether Ellis has established that he is entitled to vacation or modification of the commercial arbitration award pursuant to sections 10 and 11 of the Arbitration Act. *See, e.g., id.* at 614–17 (Wherein we reviewed the award under the standard

---

7. The Eighth Circuit has pointed out that: "Some courts, however, have suggested that an award may be set aside if it is in 'manifest disregard of the law,' ... is completely irrational in that it fails to draw its 'essence' from the agreement, ... or contravenes a deeply rooted public policy.... These exceptions to the facial restraints on judicial review set forth in the Act are generally derived from language in *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), establishing the scope of judicial review in labor arbitration cases, and from dictum in *Wilko v. Swan,* 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953), recognizing 'manifest disregard' as a possible ground for vacating an award." *Stroh Container Co. v. Delphi Industries, Inc.,* 783 F.2d at 749–50 (citations and footnotes omitted). This Circuit has yet to adopt these exceptions to sections 10 and 11 of the Act when reviewing commercial arbitration awards. We refrain to do so today.

applicable to labor arbitration awards, determining whether the award failed to "draw its essence from the collective bargaining agreement."). *But see Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383 (11th Cir.1988) ("[R]eviewing the district court's refusal to vacate under the narrow 'abuse of discretion' standard.").

■ Initially, Ellis claims that the arbitrators precluded him from presenting evidence regarding the amount, if any, of the partnership's liability. The appellant points out that the arbitrators bifurcated the arbitration proceedings, initially determining whether a partnership existed and secondly, the partnership's and/or Ellis's liability. Ellis argues that the arbitrators prematurely concluded the proceedings and thus in effect barred him from presenting evidence regarding his liability. The appellant concludes that the "change in [the] announced [bifurcated] procedure" resulted in a denial of procedural due process.

We observe that under the Arbitration Act we are permitted to vacate an arbitration award where the arbitrators "refuse[d] to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(c). Our review of the record reveals that the arbitrators initially did limit the presentation of evidence to the question of the partnership's existence. However, contrary to Ellis's contentions, the arbitrators subsequently received evidence pertinent to the issue of the partnership's liability. After Ellis introduced evidence regarding his claim in which he denied the existence of the partnership, Moseley in presenting its evidence established that Ellis and Rossini were in fact partners. At the close of Moseley's presentation the arbitrators decided to "hear the whole thing," Transcript of the Arbitration Proceedings, June 10, 1986, 1:15 p.m., p. 100, and proceeded to receive evidence relevant to the amount of the partnership debt. Our examination of the record establishes that Ellis had ample opportunity to challenge Moseley's evidence as to the amount of Ergo Partner's open account debt and to present favorable contradictory evidence (which he apparent-

ly neglected to do). We agree with the district court's finding that "Ellis was never precluded from presenting whatever arguments and evidence he wished to present," and are firmly "convinced that all parties were adequately apprised of the shift in the procedures for presenting evidence relating to [Ellis's] original claim and [Moseley's] counterclaim." Thus, we hold that the appellant received a fair arbitration proceeding, and his claims to the contrary are without merit.

Further, we note that "the arbitration system is an inferior system of justice, structured without due process, rules of evidence, accountability of judgment and rules of law." *Stroh Container Co.*, 783 F.2d at 751 n. 12. "Parties should be aware that they get what they bargain for and that arbitration is far different from adjudication." *Id.* at 751. Ellis "bargained *ex ante* for arbitration as an alternative means of dispute resolution, and *ex post* must abide by this bargain." *Grasselli*, 790 F.2d at 614.

■ Second, Ellis claims the arbitration panel lacked jurisdiction to determine questions of partnership liability because under Illinois law all partners must authorize and "submit a partnership claim or liability to arbitration." Ill.Rev.Stat. ch. 106½, ¶ 9(3)(e). Since Rossini neither authorized nor submitted the issue of the partnership's liability to arbitration, and since Moseley failed to join Rossini as a party to the arbitration, Ellis concludes that:

> "[t]he alleged partnership, ... could not and did not submit to arbitration and *thus regardless of what was submitted by Appellee [Moseley] and what Appellant [Ellis] did or did not or could have done by way of objection*, the panel simply had no jurisdiction to determine questions of partnership liability."

Appellant's Brief at 14 (emphasis added).

We note that Ellis's "suggestion that the subject matter 'jurisdiction' of the arbitrators could not be enlarged by the conduct of the parties misapplies the analogy—the authority of the arbitrators, unlike that of a court, was rooted in the parties' consent." *Ficek v. Southern Pacific Co.*, 338 F.2d

655, 657 (9th Cir.1964), *cert. denied,* 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965). In this case, the parties assented in the Submission Agreement to submit Ellis's claim and Moseley's related counterclaims to arbitration. The appellant's claim required the arbitrators to determine whether Ellis and Rossini were involved in a partnership. Moseley's counterclaim asserted that Ellis, a general partner in Ergo Partners (or Ergo Asset Management, Inc.), was liable for the open account debt. Ellis neither objected to the arbitrators' determining the partnership's liability nor challenged the arbitrators' authority under Illinois partnership law to reach this issue. The law is well settled that: "A claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act." *Ficek,* 338 F.2d at 657; *see also Comprehensive Accounting Corp. v. Rudell,* 760 F.2d 138, 140 (7th Cir.1985) (Observing that where a party "actually participated in the arbitration without challenging the arbitrator's authority till the arbitration was completed and [the party] had lost" is a "tactic that the law of arbitration, with its commitment to speed, will not tolerate."). In this case, Ellis not only voluntarily submitted his claim to arbitration but also demanded arbitration of his claim and further assented to arbitrate Moseley's counterclaims. Having insisted on the arbitration, Ellis is now precluded from challenging the arbitrators' power to determine the partnership's and/or Ellis's liability.

In any event, we are convinced that the arbitration panel did not exceed its authority in determining Ellis's liability under Illinois partnership law.[8] Illinois law provides, in relevant part, that:

" ... Unless authorized by the other partners or unless they have abandoned the business, one or more but less than all the partners have no authority to:

\*　　\*　　\*　　\*　　\*　　\*

... Submit a partnership claim or liability to arbitration or reference."

Ill.Rev.Stat. ch. 106½, ¶ 9(3)(e). Ellis argues that this statute, which is identical with § 9 of the Uniform Partnership Act, prohibits arbitration of the partnership's liability without the authorization of all the partners. Although "[t]here is little authority dealing with Section 9(3) of the Uniform Partnership Act," *Ferreri v. First Options of Chicago, Inc.,* 623 F.Supp. 427, 436 (D.C.Pa.1985), Ellis misconstrues the statute. At common law it was "well settled by numberless cases, that ... one partner [could not] ... submit to arbitration so as to bind his copartners." *Hall v. Lanning,* 91 U.S. (1 Otto) 160, 170, 23 L.Ed. 271 (1875). Paragraph 9(3)(e) recognizes and codifies this general rule. However, neither the common law nor the statute bars Ellis from invoking arbitration as a means to determine his liability; rather, the statute, as does the common law, prevents a partner, acting without the authority of his/her co-partners, from binding the partnership or the co-partners by an arbitration award. *See, e.g., Karthaus v. Yllas Y. Ferrer,* 26 U.S. (1 Pet.) 222, 7 L.Ed. 121 (1828) (Noting that at common law a part-

**8.** We observe that at least one court found that § 9(3)(e) of the Uniform Partnership Act is inapplicable in a diversity action in which an agreement to arbitrate is governed by the federal Arbitration Act. *Wydel v. Thermasol, Ltd.,* 452 F.Supp. 739 (W.D.Tex.1978). In *Wydel,* the plaintiff entered into a contract which was not executed by all the partners of the defendant partnership. The defendant asserted in the diversity action that the arbitration clause contained in the contract was not binding upon the partnership because the contract was not executed according to § 9(3)(e). The court found: "Although state law is normally controlling in a diversity case, it has been held that where a case is otherwise properly before the court on

grounds of diversity that the federal substantive law can be properly applied to the interpretation of the arbitration agreement in question.... Under federal law the Court would no longer be bound to apply those state statutes which limit arbitration agreements with rules not applicable to other contracts.... It follows that § 9(3)(e) does not render the agreement unenforceable." 452 F.Supp. at 742 (citations omitted). Because we reject Ellis's claims on alternate grounds, we need not determine whether ¶ 9(3)(e) of the Uniform Partnership Act could ever render an award unenforceable under facts similar to those presented in this case.

ner's authority extends only to submitting "his own interests in the firm [to arbitration and] could not, by his submission, bind his partners."). Thus, neither the statute nor common law prohibits the arbitration of Ellis's liability.

Moreover, the better rule of law, which the Illinois courts would likely adopt, further recognizes the validity of an arbitration award where a partner ratifies his/her co-partners unauthorized submission to arbitration of the partnership's liability. *See e.g., Stein–Tex v. Scappatillio,* 193 Misc. 402, 87 N.Y.S.2d 317 (Sup.Ct.1948), *modified on other grounds,* 275 A.D. 749, 88 N.Y.S.2d 270 (App.Div.1949); *Ferreri,* 623 F.Supp. 427 (D.C.Pa.1985); *Wydel Assoc. v. Thermasol, Ltd.,* 452 F.Supp. 739 (W.D. Tex.1978). For example, in *Scappatillio,* three partners, Scappatillio, Vitaglione, and Capitumino, doing business under the partnership name of Vee Togs Blouse Co., entered into a contract (containing an arbitration clause) to purchase 10,000 yards of material from the plaintiff. Here again, the contract was signed by only one partner, Scappatillio, on behalf of the partnership. When the plaintiff delivered the goods the partnership refused acceptance (although the partnership had previously accepted and paid for samples of the goods). Plaintiff successfully arbitrated its contract claim and subsequently brought a motion to confirm the award. One partner, Vitaglione, asserted that the contract, as it related to the agreement to arbitrate, was invalid since it was not authorized by all the partners. The court rejected Vitaglione's objection noting that it is held:

"that though one partner may not bind his copartner by a submission to arbitration, yet any manner of authority given by one partner to his copartner will be sufficient to bind the firm; that it is enough, whatever its form; if it appears that it was the intent to allow the partner to act as he did and that it will be sufficient to render the arbitration valid. Such assent may be express or implied."

*Scappatillio,* 193 Misc. at 404, 87 N.Y.S. 2d at 319.

In this case Ellis assented to arbitrate both his claim and Moseley's counterclaims. Previously, his partner and codefendant, Rossini, admitted the existence of the partnership and executed a promissory note to Moseley for the full partnership debt. Rossini conceded his liability and implicitly, if not expressly, consented to bind the firm with his concession of liability. His actions along with Ellis's demand for arbitration clearly rendered the arbitration valid as to the issue of partnership liability. As the district court noted: "at the time the matter was submitted to arbitration the only stakeholder or person with an interest in a determination of the partnership debt was Ellis." Section 9(3)(e) of the Uniform Partnership Act, as adopted by Illinois, does not, under these circumstances, bar an arbitration panel from determining the partnership's and/or Ellis's liability. Thus, we hold the arbitrators acted within the scope of their power in determining the partnership's liability.

Last, Ellis contends that as a joint obligor he is not liable to the appellee because Moseley received full payment for the partnership debt from Rossini in the form of a promissory note. We construe Ellis's claim as asserting that the arbitrators exceeded their powers because they disregarded Illinois partnership law and the law of accord and satisfaction. Initially, Ellis points out that under Illinois law:

"All partners are liable

(a) Jointly and severally for everything chargeable to the partnership under Sections 13 and 14.

(b) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract."

Ill.Rev.Stat. ch. 106½, ¶ 15. The appellant contends that as a partner in Ergo Partners, he is jointly, not jointly and severally, liable for the partnership debt. Ellis essentially argues that in the case of a joint debt a claimant cannot seek satisfaction from a joint debtor without "the approval or at least to the detriment of the other joint obligor." Appellant's Brief at 16. Fur-

ther, the appellant points out that Moseley received payment for the debt from Rossini (the promissory note) and asserts: "Appellee made its own bargain and the arbitrators in failing to recognize the true nature of the liability they were finding, gave to the Appellee rights against Appellant, which it had already voluntarily bargained away." *Id.* Ellis states: "The findings of the arbitrators as to a dollar amount *is not really the issue* in the question of a joint as opposed to joint and several liability. The important issue, as to the amount of liability, is the nature of the liability as a matter of substance." *Id.* at 16–17 (emphasis added). The appellant concludes that the "note was a complete defense" to his alleged liability and that Moseley "had no choice but to look to the note it bargained for and received for whatever satisfaction it could get of the original debt." *Id.*

■ At the outset, assuming *arguendo,* that an arbitration award can be challenged where arbitrators "manifestly disregard" the law, we reject the appellant's final challenge to the order confirming the arbitration award because Ellis's argument to the district court sought only to modify the amount of the award and limit his liability to $16,000 rather than the $32,000 awarded by the arbitrators. When presenting his case to the district court, Ellis did not argue that the award be vacated because the partnership debt was satisfied in full as a result of Rossini's promissory note. Rather, as noted, Ellis simply requested the award be modified to reflect that his liability was limited to $16,000. "On numerous occasions we have held that 'if a party fails to press an argument before the district court, he waives the right to present that argument on appeal.'" *Heller v. Equitable Life Assur.,* 833 F.2d 1253, 1261 (7th Cir.1987) (collecting cases). "As we have made clear, '[i]t is axiomatic that arguments not raised below are waived on appeal.'" *Id.* at 1262 (quoting *Keene Corp. v. International Fidelity Insurance Co.,* 736 F.2d 388 (7th Cir.1984)). Since our review of the record confirms Ellis's failure to argue to the district court that the award be vacated because the debt was fully satisfied, we hold that Ellis "is barred from pursuing this argument on appeal." *Reynolds v. Bowen,* 844 F.2d 451, 453 (7th Cir.1988).

■ In any event, Illinois partnership law would not change the outcome in this instance. Although "Illinois law imposes joint liability ... for the obligations of the partnership," *First National Bank & Trust Co. v. Rosewell,* 93 Ill.2d 388, 393, 67 Ill.Dec. 87, 90, 444 N.E.2d 126, 129 (1982) (Citing to Ill.Rev.Stat. ch. 106½, ¶ 15), "the fact remains that partnership debts are debts of the members of the firm whose liability therefor is direct and primary." *In re Bernstein,* 197 F.2d 378, 381 (7th Cir. 1952). In other words:

> "The rule of joint liability under the Uniform Act is a codification of the common-law rule that partnership contracts are joint only, and not joint and several, as to which the partners are not severally liable. However, where assets of the partnership are inadequate to pay the partnership debts, or there is no effective remedy without resort to the property of individual partners, then the partners may be individually liable for partnership contracts. On each partner rests an absolute liability for the whole amount of every debt owed by the partnership and, although originally a joint contract, it may be separate as to its effects."

59A Am.Jur.2d Partnership § 639 (1987) (footnotes omitted). Thus, Ellis is liable as a joint obligor for the full partnership debt. *See also Sternberg Dredging Co. v. Sternberg's Estate,* 10 Ill.2d 328, 140 N.E.2d 125 (1957).

However, "[t]he partnership obligation of appellants being a joint obligation and not a joint and several obligation, the suit must run against all the partners jointly or against none of them," *Eastern Electrical Co. v. Taylor Woodrow Blitman Const.,* 11 Mass.App. 192, 414 N.E.2d 1023, 1025 (1981) (Noting the general rule as cited in *Balley v. Davis,* 75 Idaho 73, 267 P.2d 631 (1954)), and "[e]nforcement could only be by a single judgment requiring a single payment," 4 Corbin on Contracts, § 925 (1951). Moseley introduced Rossini's promissory note into evidence during the arbi-

tration proceeding. Further, during his closing argument to the arbitrators, Ellis, relying on the note, attempted to convince the panel that the partnership debt had been satisfied. An arbitrator responded, noting he was "not sure [the panel could] open up stuff on closing." Arbitration Transcript, June 10, 1986, 1:15 p.m., p. 168. Thus, it appears that the arbitrators may have erred in finding against Ellis because the debt may have been satisfied with Moseley's acceptance of the promissory note. Nonetheless, we will not hold that the arbitrators exceeded their powers. We conclude that the arbitrators' findings, at most, merely reflect that the arbitrators made an error of law in applying Illinois' partnership law and/or the law of accord and satisfaction. But as the Second Circuit observed:

"Turning to the merits it is settled that upon judicial review of an arbitrators' award 'the court's function in ... vacating an arbitration award is severely limited', ... being confined to determining whether or not one of the grounds specified by 9 U.S.C. § 10 for vacation of an award exists. *An award will not be set aside because of an error on the part of the arbitrators in their interpretation of the law....* Judicial review has been thus restricted in order to further the objective of arbitration, which is to enable parties to resolve disputes promptly and inexpensively, without resort to litigation and often without any requirement that the arbitrators state the rationale behind their decision...."

*Office of Supply, Gov. of Rep. of Korea v. New York Navigation Co.,* 469 F.2d 377, 379 (2d Cir.1972) (footnotes and citations omitted) (emphasis added); *see also Local No. P–1236, Etc. v. Jones Dairy Farm,* 680 F.2d 1142, 1144 (7th Cir.1982); *National Railroad Passenger Corp. v. Chesapeake & Ohio Railway Co.,* 551 F.2d 136, 143 (7th Cir.1977); *Revere Copper & Brass Inc. v. Overseas Private Investment Corp.,* 628 F.2d 81, 84 (D.C.Cir.), *cert. denied,* 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980). Thus, we can only set aside the award if injustice results. Here, although Moseley is now armed with two judgments, one

against Rossini and the one we affirm today against Ellis, the law is clear that Moseley is entitled to but one satisfaction. Thus, we conclude that when Moseley executes on the judgment against Ellis (and we assume as much since it appears from the record that Rossini is judgment proof) and collects the $32,000, Moseley will be precluded from a double recovery since Rossini could seek relief from the default judgment against him under Rule 60(b)(5) Fed.R.Civ.Proc., allowing for relief where the judgment has been "satisfied." Moseley will be limited to one satisfaction, and thus an injustice will not result from our affirmance. We need not vacate or modify the award.

We conclude, wistfully noting Ellis's opening remarks to the arbitration panel. He addressed the arbitrators as follows:

"I felt that the approach to the matter would be *expedited and handled most easily by an arbitration panel,* although I have never appeared before a panel of this kind, because the parties who will likely be on the panel will have an understanding of the validity of these assertions that might be better than that which would come out in a bear, knockdown, dragout battle in court, in addition to which, the court battle is expensive and something that is handled through other mechanisms.

I felt that the purpose of coming here was to ask the panel of arbitrators to look at whether or not ... [Moseley's] counter-claim asserts anything worthwhile, which I firmly believe it does not."

(Emphasis added). Further, Ellis executed a Submission Agreement which expressly stated that the "parties further agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement...." Our examination of the record establishes that the arbitrators neither precluded Ellis's presentation of pertinent evidence during the proceedings nor did they exceed their power in finding against Ellis. Thus, in agreeing with the arbitration panel's findings we also hold Ellis to his promise that he would "abide by and perform

any award rendered" by the arbitrators. We affirm.