MUTUAL FIRE, MARINE & INLAND INSURANCE COMPANY

v.

NORAD REINSURANCE COMPANY, LTD.

Appeal of GTE REINSURANCE COMPANY, LTD., in No. 88–1743.

Appeal of NORAD REINSURANCE COMPANY, LTD., in No. 88–1750.

Nos. 88–1743, 88–1750.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 24, 1989.

Decided Feb. 15, 1989.

---

Hughes, Hubbard & Reed, David M. Raim, Gerald Goldman, John J. Sarchio, Washington, D.C., Baskin, Flaherty, Eliot & Mannino, P.C., Edward F. Mannino, James D. Morris, Philadelphia, Pa., for defendant-appellant GTE Reinsurance Co., Ltd.

Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Alfred Sarowitz, Carl Anthony Maio, H. Marc Tepper, Philadelphia, Pa., for defendant-appellant Norad Reinsurance Co., Ltd.

Wilson, Elser, Moskowitz, Edelman & Dicker, Keith E. Johnson, Philadelphia, Pa., for plaintiff-appellee Mut. Fire, Marine & Inland Ins. Co.

Hoyle, Morris & Kerr, Gregory P. Miller, Philadelphia, Pa., for Constance B. Foster, Ins. Com'r and Rehabilitator of Mut. Fire, Marine & Inland Ins. Co.

Before GIBBONS, Chief Judge, SEITZ and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The appellants Norad Reinsurance Company, Ltd. ("Norad") and GTE Reinsurance Company, Ltd. ("GTE") appeal from the district court's order of June 28, 1988, granting the motion of appellee, Mutual Fire, Marine & Inland Insurance Company ("Mutual"), to confirm an arbitration award, and also from the order of the district court denying their motion to alter or amend the June 28, 1988 order.

## I. BACKGROUND

The instant dispute arises from two re-reinsurance contracts, the Companion Line Casualty Quote Share Retrocession Contract ("Companion Line Treaty") and the International Account Obligatory Surplus Treaty ("International Treaty"). In the present re-reinsurance situation the chain of insurance was as follows: (1) policyholders were insured by an insurance company; (2) the insurance company then reinsured a portion of its risks with Mutual; and, (3) Mutual then re-reinsured (or "retroceded")

a portion of its risks with other companies including Norad and GTE.

Under the Companion Line Treaty, GTE and Norad assumed a portion of Mutual's obligations on casualty reinsurance business written by Mutual in respect of United States domiciled risks. This Treaty remained in effect from July 1, 1981 until June 30, 1985. Sometime towards the end of the fourth year of the Treaty, GTE and Norad became concerned that Mutual's obligations under the Treaty were not being met. Thereafter, appellants commissioned two audits of Mutual. Based on the information derived from these audits Norad and GTE sought arbitration with Mutual in order to settle their grievances.

Under the International Treaty, GTE assumed certain of Mutual's obligations on reinsurance written by Mutual in respect of non-United States domiciled reinsureds. This Treaty was in effect from April 1, 1982 though June 30, 1985. As was the case with the Companion Line Treaty, GTE sought arbitration after an audit of Mutual was conducted.

The arbitration proceedings involving both Treaties were commenced in 1986. As to both Treaties, appellants alleged that they were entitled to relief in that: (1) Mutual made misrepresentations in order to induce appellants to enter into the Treaties; and (2) Mutual retroceded risks to GTE and Norad which should not have been retroceded under the terms of the respective contracts. In their Pre–Hearing Memorandum of Law in the Companion Line Treaty arbitration the appellants specifically requested relief including the following:

1. The retrocessional agreements between Mutual Fire [Mutual] and GTE RE [GTE] and Norad should be rescinded from inception,

2. Alternatively, GTE RE and Norad should be adjudged to have no liability for certain retrocession including business which was outside the terms of the retrocessional treaties, business produced in violation of Mutual Fire's duty of utmost good faith.... If the panel determines that it is not possible to sort out exactly which of Mutual Fire's cessions should be covered and which should not (particularly in light of the poor accounting and difficulty of computing the value of Mutual Fire's breaches) ... the panel should hold that GTE RE and Norad are responsible for only a set percentage, *e.g.*, 20% of Mutual Fire's retrocessions.

In almost identical language, GTE, in its Pre–Hearing Memorandum of Law in the International Treaty arbitration, requested relief including the following:

1. The retrocessional agreements between Mutual Fire and GTE RE shall be reduced from inception.

2. Alternatively, GTE shall be adjudged to have no liability for business which was outside the terms of the retrocessional agreements and business produced in violation of Mutual Fire's duty of utmost good faith.... If the panel determines that it is not possible to sort out exactly which of Mutual Fire's cessions should be covered and which should not ... the panel should hold that GTE RE and Norad [sic] are responsible for a set percentage of Mutual Fire's cessions.

Based on the hearings and submissions of the parties, including the above-mentioned Pre–Hearing Memoranda of Law, the three-person panel of arbitrators determined that GTE and Norad were not entitled to rescind the Companion Line Treaty but that their participation in the Treaty for each underwriting year, retroactively from inception, should be reduced by 10.8%. Similarly, the arbitrators determined that GTE was not entitled to rescission of the International Treaty but instead reduced GTE's participation in the Treaty by 10.8% for each underwriting year, retroactively from the Treaty's inception.

On May 5, 1987, Mutual filed a motion in the Eastern District of Pennsylvania pursuant to 9 U.S.C. § 9 to confirm both arbitration awards.[1] This motion was granted by

---

1. In pertinent part, 9 U.S.C. § 9 provides: "If the parties in their agreement have agreed that a

judgment of the court shall be entered upon the award made pursuant to the arbitration, and

the district court by order entered June 28, 1988. Later Norad and GTE filed a motion with the district court pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend its June 28, 1988 order. The appellants' motion to alter or amend was denied and this appeal followed.

## II. JURISDICTION

■ In their opening brief to this Court, appellants, strangely enough, question this Court's jurisdiction. In this case, the district court, in accordance with Rule 58 of the Federal Rules of Civil Procedure filed its order confirming the award with the Clerk of court.[2] This order was entered by the Clerk on June 28, 1988.[3] By letter dated July 5, 1988, in order to comply with the procedural requirements of 9 U.S.C. § 13[4], Mutual requested the Clerk of court to (1) file the agreements containing the arbitration clause, the arbitration awards, the Motion to Confirm the Arbitration Awards and the Order Confirming the awards entered June 28, 1988; and (2) to enter judgment on the Order confirming the arbitration. The Clerk did not, however, choose to enter judgment. The Clerk's action appears to based on the belief that the award was incomplete because it did not state with sufficient specificity who won the arbitration and in what amount. These objections were matters for the court and not the Clerk.

Appellants contend that the Clerk's failure to enter judgment deprives this Court of jurisdiction. We do not agree. On the facts of this case, the mere failure by the Clerk to perform his nondiscretionary duty of entering judgment does not force this Court to eschew exercising jurisdiction. Instead, we conclude that the filing of the papers required by 9 U.S.C. § 13 in light of the earlier entry of judgment on the district court's order amounted to the functional equivalent of a duly entered final judgment. To suggest a dismissal or remand would require, as the Supreme Court said in a related factual context, wheels to spin for no practical purpose. *Bankers Trust Company v. Mallis*, 435 U.S. 381, 385, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978). Finding appellate jurisdiction, we proceed to the merits.

## III. DISCUSSION

The appellants claim that the arbitral awards should be vacated because (1) the arbitrators acted beyond the scope of their authority; and (2) the arbitrators impermissibly engaged in ex parte investigations. In the alternative, appellants request that this Court either remand the case to the district court for a more complete explanation as to the grounds upon which it denied appellants' motion to alter or amend the June 28, 1988 confirmation order or vacate the district court's confirmation order and

---

shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award...." In this case, both Treaties provided that judgment upon an arbitration award may be entered in any court having jurisdiction.

**2.** Rule 58 of the Federal Rules of Civil Procedure provides, in pertinent part: "[e]very judgment shall be set forth on a separate document. A judgment shall be effective only when so set forth and when entered as provided in Rule 79(a)."

Rule 79(a) of the Federal Rules of Civil Procedure states, in relevant part: "All papers filed with the clerk, all process and issued and returns made thereon, all appearances, orders, verdicts and judgments shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number."

**3.** Appellants do not contend that the June 28, 1988 order fails to contain a sufficient directive to evidence an intention on the part of the district judge to enter a final judgment.

**4.** 9 U.S.C. § 13 provides in pertinent part: "The party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk:

(a) The agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of time, if any, within which to make the award.

(b) The award.

(c) Each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application."

remand this case to the arbitration panel. We will deal with each of the arguments in turn.

## A. SCOPE OF AUTHORITY

■ Appellants argue that the arbitrators in this case exceeded their powers by capriciously concluding that exactly 10.8% of the risks were improperly ceded under both retrocession agreements. Appellants claim that the arbitrators' conclusion was not based on their interpretation of the contracts before them but was an impermissible use of "industrial justice" providing grounds for this Court to vacate the award. *See* 9 U.S.C. § 10(d) (arbitration award can be vacated where arbitrators exceed their powers).

In reviewing the district court's denial of appellants motion to vacate the arbitration award, this Court will stand in the shoes of the district court and determine whether appellants were entitled to vacate the arbitration award pursuant to 9 U.S.C. § 10(d). *Moseley, Hallgarten, Eastabrook & Weeden v. Ellis*, 849 F.2d 264, 267 (7th Cir. 1988). It is, however, well established that the "court's function in confirming or vacating a commercial [arbitration] award is severely limited." *Swift Indus. v. Botany Indus.*, 466 F.2d 1125, 1130 (3d Cir.1972). In conducting our review we must examine both the form of relief awarded by the arbitrator as well as the terms of that relief. We must determine if the form of the arbitrators' award can be rationally derived either from the agreement between the parties or from the parties submissions to the arbitrators. *Id.* at 1131. *See Piggly Wiggly Operators' Warehouse v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir.1980) (arbitrators' authority is determined by the parties' contract and the submission of the issues to the arbitrators). In addition, the terms of the arbitral award will not be subject to judicial revision unless they are "completely irrational." *Swift Indus. v. Botany Indus.*, 466 F.2d at 1131.

In this case, we conclude that the arbitrators did not exceed their authority in reducing the appellants' participation in each of the Treaties by 10.8%. In submitting the issues to the arbitrators, the appellants stated:

> If the panel determines that it is not possible to sort out exactly which of Mutual Fire's cessions should be covered and which should not ... the panel should hold that GTE RE and Norad are responsible for only a set percentage, e.g. 20%, of Mutual Fire's retrocession.

Thus, the panel's decision to reduce the appellants participation by a fixed percentage, i.e. 10.8%, is a form of relief which is rationally derived from the appellants submission of the issues to the arbitrators.

■ Furthermore, we cannot conclude that the 10.8% reduction is completely irrational. The evidence before the arbitration panel was that Mutual's records were sloppily kept and that some number of the retrocession to GTE and Norad was in error. GTE and Norad claim that the arbitrators' identical reduction of 10.8% in both the Companion Line Treaty and the International Treaty is evidence that the panel dispensed its own brand of industrial justice rather than enforcing the agreement of the parties. It is not this Court's role, however, to sit as the panel did and reexamine the evidence under the guise of determining whether the arbitrators exceeded their powers. *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 703 (2d Cir.1978). We find that the mere fact that the panel rendered an identical award as to two different treaties does not "overcome the strong presumption in favor of the award." *Newark Morning Ledger Co. v. Newark Typographical Union, Local 103*, 797 F.2d 162, 165 (3d Cir.1986). We conclude that the panel's 10.8% reduction was not completely irrational.

## B. EX PARTE INVESTIGATION

■ Section 10(c) of the Federal Arbitration Act, 9 U.S.C. § 10(c), allows a court to vacate an arbitral award where the "arbitrators were guilty of ... any misbehavior by which the rights of the party have been prejudiced." Pursuant to this provision the court has the power to vacate an arbitral

award where ex parte information is received by the arbitrators to the prejudice of one of the parties. *Totem Marine Tug & Barge v. North Am. Towing,* 607 F.2d 649, 653 (5th Cir.1979).

In this action, appellants claim that the arbitrators engaged in ex parte communications which compel this Court to vacate the arbitral award. First, the panel in its award on the Companion Line Treaty stated: "[A] separate decision on the GTE Reinsurance International Treaty will be forthcoming when additional information becomes available to the arbitrators." Appellants contend that this statement shows that "[o]bviously, the panel was conducting its own ex parte investigation."

Second, appellants note that one of the arbitrators, Mr. McIllwain, in the course of questioning one of the witnesses before the arbitration panel, engaged in the following dialogue with the witness:

Q [by Mr. McIllwain]: Where is Mr. Bowers now?

A: I have no idea where he is located.

Mr. Lanning [another member of the arbitration panel]: I have been told that he is working in some noninsurance job in New York. He has a wife who is much better known in the reinsurance business.

Mr. McIllwain: Did he retire from Mutual Fire?

Mr. Lanning: I do not know the exact history of the thing, but I made inquiry as to what he was doing now. I was told he was in a noninsurance job in New York.

\* \* \* \* \* \*

He was with Nerco (Phonetic) up in Boston. I have talked with the President of John Hancock Life, who was his boss at Nerco, which is New England reinsurance company. She described him as a very capable man. I never met him, so I do not know. Other people have different opinions of him.

Appellants contend that this colloquy is evidence that the arbitration panel engaged in ex parte investigations of Mr. Bowers; Bowers was one of Mutual's representatives.

The burden of proof rested squarely on the shoulders of appellants to show that prejudicial ex parte communications took place. It has been said that "an arbitration award should only be upset with great hesitation and then only where the party attacking it clearly establishes one of the grounds specified in § 10." *Catz Am. Co. v. Pearl Grange Fruit Exch.,* 292 F.Supp. 549, 551 (S.D.N.Y.1968). This is consistent with the general philosophy that there is a presumption in favor of an arbitration award's validity. *Newark Morning Ledger Co. v. Newark Typographical Union, Local 103,* 797 F.2d 162, 165 (3d Cir.1986).

Even if we assume, as appellants contend, that the evidence they proffered establishes that the arbitrators engaged in some form of ex parte contacts, we nevertheless conclude that the arbitration award can stand because the appellants have failed to carry their burden of showing how these contacts prejudiced them. The mere assertion by appellants that the arbitrators used information obtained ex parte in order to render their decision in the International Treaty and to assess the credibility of Bowers is not enough, in our view, to establish the requisite prejudice necessary for this court to vacate the arbitrator's award. *Totem Marine Tug & Barge v. North Am. Towing,* 607 F.2d 649, 653 (5th Cir.1979).

## C. MOTION TO ALTER OR AMEND

Finally, appellants claim that the district court erred in denying their motion to alter or amend the order of June 28, 1988. The appellants requested that the district court judge amend his order to state that the arbitrators did not decide what amounts Norad or GTE owed now or will in the future owe, nor did they pass upon the accuracy or completeness of Mutual's books and records. On August 28, 1988 the district court denied appellants' motion to alter or amend without explanation.

Where the district court denies a Rule 59 motion to alter or amend without stating the grounds for his decision, this Court must examine the record to determine

whether there were any grounds upon which we can sustain the district court's decision. *Adams v. Gould,* 739 F.2d 858 (3d Cir.1984), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985). We need not, as appellants contend, remand this case to the district court in order to obtain a statement of the court's reasoning. Our standard of review in this case is whether the district court abused its discretion in denying appellants' motion to alter or amend. *Id.* at 864. *See Federal Kemper Ins. Co. v. Rauscher,* 807 F.2d 345, 348 (3d Cir.1986).

Appellants' motion to alter or amend the district court's order was in reality a request for the district court to clarify what appellants believed was a potentially ambiguous arbitration award. A district court itself should not clarify an ambiguous arbitration award but should remand it to the arbitration panel for clarification.[5] *United Steelworkers of America, AFL–CIO–CLC v. Danly Machine Corp.,* 852 F.2d 1024, 1027 (7th Cir.1988); *Oil, Chemical & Atomic Workers International Union, Local 4–367 v. Rohm & Haas, Texas, Inc.,* 677 F.2d 492, 495 (5th Cir.1982). Thus, our analysis must focus on whether or not the district court erred in failing to vacate its order of June 28, 1988 and remand this case to the arbitration panel for clarification.

The district court's order confirming the arbitration awards stated: "Plaintiff['s] ... motion to confirm arbitration awards is granted." The arbitration award in the Companion Line Treaty stated:

> The cessions to the Treaties involved here were within the formal treaty language. However, because some of the cessions were not completely within the representations of the type of business the cedent had expected to produce and cede top the treaties, we believe retrocessionaries are entitled to some credit. Accordingly, participation for each underwriting year, retroactively from inception, shall be reduced by 10.8%."

Similarly, the arbitration award in the International Treaty stated:

> Obviously, there was confusion as to the business to be ceded to the International Treaty in that there were cessions made to the treaty which should not have been made and business not ceded to the treaty which should have been ceded. Without in any way trying to change any one cession, or lack thereof, the panel has decided that the GTE RE participation shall be reduced by 10.8% each underwriting year, retroactively from inception.

"[R]emand to the arbitrator is the appropriate disposition of an enforcement action when an award is patently ambiguous.... A remand is inappropriate, however, where it would force a decision of an issue not previously submitted to the arbitrators." *Oil, Chemical & Atomic Workers International Union, Local 4–367 v. Rohm & Haas, Texas, Inc.,* 677 F.2d at 495 (citations omitted). As evidenced from the language quoted above, neither arbitration settlement in any way purported to quantify the amount of money due and owing or to settle the question of the accuracy of Mutual's books and records. Moreover, examining the issues submitted to the arbitrators in this case, we conclude that the arbitrators were neither asked to quantify the amount of money owing nor to pass upon the accuracy of Mutual's books and records. We, therefore, conclude that the arbitration award was not ambiguous and that a remand to the arbitration panel would not be appropriate. Thus, the district court did not abuse its discretion in denying the appellants' motion to alter or amend the district court's order of June 28, 1988.

## IV. CONCLUSION

In light of the foregoing, the district court's order confirming the arbitration awards will be affirmed. In addition, the district court's order denying appellants

---

**5.** Pursuant to 9 U.S.C. § 10(d) a district court can vacate an arbitration award where the arbitrators have failed to render a "mutual final and definite award upon the subject matter submitted" to them.

motion to alter or amend the confirmation order will be affirmed.