STROH CONTAINER COMPANY
formerly known as Jos. Schlitz
Brewing Company, Appellant,

v.

DELPHI INDUSTRIES, INC., Appellee.

DELPHI INDUSTRIES, INC., Appellee,

v.

STROH CONTAINER COMPANY
formerly known as Jos. Schlitz
Brewing Company, Appellant.

No. 85–5118.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1985.

Decided Feb. 12, 1986.

---

Paul H. LaRue, Chicago, Ill., for appellant.

Lowell E. Sachnoff, Chicago, Ill., for appellee.

Before LAY, Chief Judge, and ARNOLD and FAGG, Circuit Judges.

LAY, Chief Judge.

Stroh Container Company (Schlitz) appeals from an amended judgment denying its application to vacate or modify a commercial arbitration award, confirming the award in favor of Delphi Industries, Inc. and Geocaris and Company (Geocaris), and

granting Geocaris post-award, prejudgment interest.[1]

In March 1973, Geocaris, a Chicago based beer distributing company, entered into a wholesaler franchise agreement with Schlitz to sell Schlitz brands of beer. The agreement contained a supplemental "schedule" setting forth Schlitz's performance requirements. The schedule imposed an obligation on Schlitz to "[c]onduct all Buyer-Seller relationships in a fair and equitable manner," but the agreement also disclaimed any warranty of any kind on any beer sold to Geocaris. In the event that a product proved unsaleable due to Schlitz's fault, the agreement provided that Geocaris could be reimbursed for its net costs. The agreement stipulated that Illinois law would apply in construing its terms and set forth a three step grievance procedure for resolution of all disputes, culminating in binding arbitration. The agreement also provided that "judgment on the award rendered by the * * * arbitrators may be entered in any Court having jurisdiction thereof."

In late 1974, Geocaris, along with a beer wholesaler's association, began complaining to Schlitz personnel at all levels that Schlitz was supplying poor quality, inconsistent, and unmarketable beer. Schlitz failed to reasonably respond to these complaints until late in 1977. It is undisputed that Geocaris suffered a substantial decline in profits between 1976 and the first half of 1978.

Geocaris terminated the franchise agreement in September 1981 and filed an arbitration demand in February 1982 with the American Arbitration Association. Following lengthy disputes regarding the arbitrability of the matter and the appropriate arbitration locale, arbitration proceedings commenced in Minneapolis before a three person panel in May 1984 and was concluded in Chicago on June 30, 1984. On October 11, 1984, a majority of the panel issued an award in favor of Geocaris. The majority first concluded that the matter was procedurally arbitrable, finding that the demand was timely, that Geocaris had not lost its right to arbitrate due to any failure to comply with conditions precedent to arbitration, and that laches did not bar the arbitration. The award further found that the parties' agreement imposed on Schlitz a duty of good faith and fair dealing, and a duty to conduct all relations with Geocaris in a fair and equitable manner. Schlitz was found to have breached both of those duties "by failing to make any adequate response to the disastrous product problems repeatedly brought to its attention by [Geocaris] and other Chicago area wholesalers of Schlitz products—in effect 'stonewalling' the issue for over two and one-half years." The panel majority also found that Geocaris was entitled to damages caused by Schlitz' breach for the years 1976, 1977, and half of 1978 in the amount of $2,094,-665.91, and explicitly stated that no award of damages was made "for deficient product *per se*" because the warranty disclaimer contained in the agreement did not permit such recovery. The dissenting arbitrator strongly disagreed with the majority's result. In the dissenter's view, "to find Schlitz liable here is tantamount to making it the fiduciary, or the insurer, of the distributor's profits."

After the entry of the award, both parties sought judicial review pursuant to the Federal Arbitration Act (hereinafter "the Act"). 9 U.S.C. §§ 1–14. Schlitz commenced an action in Minnesota district court seeking vacation of the award under section 10[2] of the Act or a modification of

---

1. Appellant Stroh Container Company was known as Schlitz Brewing Company at the time the arbitration award was made. Appellee Geocaris and Company merged with Delphi Industries after the arbitration. Since both the arbitration panel and the district court referred to the parties as "Schlitz" and "Geocaris," the same party designations will be used in this opinion for the sake of consistency.

2. Section 10 of the Act sets forth the grounds for vacating an award, which include:
 (a) Where the award was procured by corruption, fraud, or undue means.
 (b) Where there was evident partiality or corruption in the arbitrators, or either of them.
 (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to

the award under section 11.[3] In the meantime, Geocaris had filed an action to confirm the award pursuant to section 9[4] in the northern district of Illinois. That court[5] transferred Geocaris' action to the federal district court for the district of Minnesota under 28 U.S.C. § 1404(a), permitting a district court to transfer an action for the convenience of parties and witnesses and in the interests of justice to any other district where the action might have been brought.

Schlitz thereafter moved the Minnesota district court to stay Geocaris' confirmation action pending the outcome of Schlitz' ac-

hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Subdivision (e) of section 10 permits a court to direct a rehearing of the matter in certain instances upon vacating the award. *Id.*

3. Section 11 permits a court in any of the following cases to modify or correct an award to effect the intent of the award and to promote justice between the parties:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

4. Section 9 provides in relevant part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply *to the court so specified for an order confirm-*ing the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

tion. The district court[6] denied Schlitz' request, and instead consolidated the actions for argument and decision. The district court subsequently confirmed the award and held Schlitz additionally liable for post-award, prejudgment interest. Schlitz then appealed to this court, challenging the judgment below on jurisdictional, procedural, and substantive grounds.

**Procedural challenges.**

■ Schlitz claims that the award should be vacated on the ground that the underlying dispute was not procedurally arbitrable.[7] In support of this contention, Schlitz

9 U.S.C. § 9.

5. The Honorable Milton I. Shadur, United States District Court for the Northern District of Illinois.

6. The Honorable Paul A. Magnuson, United States District Court for the District of Minnesota.

7. Schlitz also maintains that Geocaris' action for confirmation of the award, brought pursuant to section 9 of the Act, was improperly adjudicated by the Minnesota district court for lack of subject matter jurisdiction. Section 9 permits a party to seek confirmation of the award in the court specified by their agreement, or, if no court is specified, in the district within which such award was made. Schlitz relies on the language of 28 U.S.C. § 1404(a) that if a transferor court lacks subject matter jurisdiction over the transferred action, the transferee court likewise lacks jurisdiction to decide it. *See, e.g., Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947) (forum non conveniens never applicable in the absence of jurisdiction). This argument overlooks the recent enactment of 28 U.S.C. § 1631, which confers upon federal courts general transfer power to cure a want of jurisdiction. *See also Hempstead County and Nevada County Project v. United States Environmental Protection Agency,* 700 F.2d 459, 462–63 (8th Cir.1983). Nonetheless, Schlitz urges us to construe section 9 of the Act as conferring exclusive subject matter jurisdiction for this action in the district of Minnesota where the award was entered and to conclude that since Geocaris commenced its confirmation action in Illinois district court, the Illinois court's transfer of the action under § 1404(a) was ineffective to confer jurisdiction on the Minnesota court.

Even had the Illinois district court simply dismissed Geocaris' action, as Schlitz suggested would have been the proper course, the issues presented in the confirmation action would nec-

first argues that the dispute was not "ripe" for arbitration since Geocaris had failed to comply with the pre-arbitration steps set forth in the grievance procedure prior to making its arbitration demand. Schlitz also argues that Geocaris lost its right to arbitrate this dispute because Geocaris terminated its relationship with Schlitz before making the arbitration demand, and, finally, that arbitration should have been denied under equitable principles of laches.

Schlitz first raised these arguments before a federal district court[8] prior to the commencement of arbitration. That court in turn referred all issues of procedural arbitrability to the arbitration panel. Schlitz again raised the identical contentions to the arbitration panel. The panel majority made the following findings resolving Schlitz's procedural challenges:

1. This matter came on before the arbitration panel pursuant to a timely demand as amended by claimant which demand as amended was made pursuant to the Wholesaler/Franchise Agreement.

2. Claimant's right to arbitrate survived the termination of the Wholesaler/Franchise Agreement.

3. Claimant did not lose its right to arbitrate due to any failure to comply with conditions precedent to arbitration.

4. Arbitration was not barred by laches.

The dissenting arbitrator, while disagreeing with the majority on the merits, did not contest the majority's findings on arbitrability. The Minnesota district court also rejected Schlitz's procedural challenge, noting first that "Schlitz raised these issues in the proceedings below and the arbitrators found them to be without merit," and finding "that these issues continue to be without merit."

■■■ Our review of the challenged procedural arbitrability determinations must be conducted in light of the established principle that such issues should be left to the arbitrator to decide. *See John Wiley & Sons v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964); *Automotive, Petroleum and Allied Industries Employees Union v. Town and Country Ford, Inc.,* 709 F.2d 509, 511 (8th Cir.1983). This rule of deference is founded on the recognition that (1) procedural questions are often intertwined with the merits of the dispute and (2) the reservation of procedural issues for the courts provides an opportuni-

essarily have been decided as part and parcel of Schlitz' own action for vacation or modification of the award. The Minnesota district court reached the same conclusion in ordering all the actions consolidated for decision. Moreover, Geocaris would have been free to file a new, separate action for confirmation in Minnesota had the Illinois action been dismissed. Thus, Schlitz would have occupied the same position with respect to its liability for the award regardless of the route taken to the jurisdiction of the Minnesota district court.

The linchpin of Schlitz' jurisdictional challenge is its premise that section 9 establishes a jurisdictional limitation on the availability of a federal forum for confirmation actions above and beyond ordinary diversity or federal question requirements. We construe section 9, however, not as creating a jurisdictional barrier, but as a special venue provision. This construction is also consistent with the language of related provisions of the Act permitting actions in federal court. *See* 9 U.S.C. § 3, § 4. Neither section 3, allowing a court to stay an action in which the dispute is subject to arbitration under the parties' agreement, nor section 4, permitting a court to compel arbitra-

tion upon a petition by either party to an arbitration agreement, countenance that the arbitration agreement itself may confer federal subject matter jurisdiction. *See Commercial Metals Co. v. Balfour, Guthrie & Co. Ltd.,* 577 F.2d 264, 266–68 (5th Cir.1978) (action to compel arbitration under section 4 requires independent jurisdictional basis); Wright, Miller & Cooper, Federal Practice and Procedure § 3569 at 171 (section 3 necessarily presupposes an independent jurisdictional basis). Since sections 3 and 4 neither expand nor contract federal subject matter jurisdiction, it would be anomalous to construe section 9 as affecting the scope of jurisdiction. *See Moses H. Cone v. Mercury Construction Co.,* 460 U.S. 1, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983). Geocaris properly pled diversity of citizenship jurisdiction in the Illinois district court in its confirmation action. Thus, subject matter jurisdiction was not defective in that action, and Schlitz' argument that the Illinois court lacked jurisdiction to effect a transfer to the Minnesota district court must fail.

8. The Honorable James B. Parsons, United States District Court for the Northern District of Illinois.

ty for serious delay and duplication of effort. *See Wiley,* 376 U.S. at 556–58, 84 S.Ct. at 917–18.[9] In translating this rule of deference into a standard of review, we must therefore accord even greater deference to the arbitrator's decisions on procedural matters than those bearing on substantive grounds. *United Steelworkers of America v. Ideal Cement Co.,* 762 F.2d 837, 841 (10th Cir.1985). As we discuss *infra,* an arbitrator's conclusions on substantive matters may be vacated only when the award demonstrates a manifest disregard of the law where the arbitrators correctly state the law and then proceed to disregard it, if the award is otherwise irrational, or if any of the explicit grounds for vacation or modification set forth in sections 10 and 11 of the Act are present.

Given the narrow sweep of that standard it is difficult to articulate a standard of an even lesser scope to apply for procedural challenges. In this case, however, we need not reach for the appropriate articulation of the lesser standard, since even under the "manifest disregard" standard, the arbitrator's determinations must be upheld. There is simply no suggestion in the findings made by the arbitrators on the procedural arbitrability question that they expressly flouted the law in reaching their decision or otherwise acted irrationally. Nor are any of the bases for judicial action enumerated in sections 10 and 11 met here. *See* 9 U.S.C. §§ 10, 11. We hold, therefore, that the procedural issues were properly decided by the arbitrators based on their own conclusion that the matter was properly before them.

**Substantive challenges.**

Schlitz's principal challenge to the award on appeal concerns the substantive propriety of the award. Schlitz argues that the award must be vacated or modified on the grounds that the arbitrators manifestly disregarded the law in awarding damages and in applying the applicable state statute of limitations, that the award failed to "draw its essence" from the contract, and that the award was irrational as to liability and the size of the damage award.

In considering the merits of Schlitz's argument on these points, we must first determine whether the grounds set forth by Schlitz constitute permissible bases for vacating or modifying the award under the statute. By their express terms, sections 10 and 11 allow an award to be disturbed when the process was seriously subject to question, *see* 9 U.S.C. § 10(a), (b), (c), when the arbitrators "exceeded their powers," *see* 9 U.S.C. §§ 10(d), 11(b), or when a simple formal, descriptive, or mathematical mistake was made, *see* 9 U.S.C. § 11(a), (c). These grounds have often been deemed the exclusive grounds for vacation or modification. *See Shearson Hayden Stone, Inc. v. Liang,* 653 F.2d 310, 312 (7th Cir.1981); *Diapulse Corp. of America v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir.1980). Some courts, however, have suggested that an award may be set aside if it is in "manifest disregard of the law," *Office of Supply, Government of Republic of Korea v. New York Navigation Co.,* 469 F.2d 377, 379–80 (2d Cir.1972); *Swift Industries, Inc. v. Botany Industries, Inc.,* 466 F.2d 1125, 1130–31 (3rd Cir.1972); *San Martine Compania de Navegacion v. Saguenay Terminals, Ltd.,* 293 F.2d 796, 801 (9th Cir.1961), is completely irrational in that it fails to draw its "essence" from the agreement, *Storer Broadcasting Co. v. American Federation of Television and Radio Artists,* 600 F.2d 45, 47–48 (6th Cir.1979), *Swift Industries,* 466 F.2d at 1131, or contravenes a deeply rooted public policy, *Revere Copper and*

---

**9.** The *Wiley* rule arose from and has most often been applied in the context of arbitrations involving disputes under collective bargaining agreements. We find its rationale equally applicable in the commercial arbitration setting. *See District No. 9, IAM v. Wagner Division, McGraw Edison Co.,* 567 F.Supp. 973, 977 (E.D.Mo.1983); *Newark Stereotypers Union v. Newark Morning Ledger Co.,* 261 F.Supp. 832, 834–35 (D.N.J.

1966). Substantive and procedural issues are no less overlapping in commercial arbitrations, and, as this case indicates, the hazards of delay and duplication of effort are no less probable. We are now the third judicial decision maker to review these questions, in addition to the consideration given the procedural arbitrability issues by the three-person arbitration panel.

*Brass, Inc. v. Overseas Private Investment Corp.,* 628 F.2d 81, 83 (D.C.Cir.1980), *Diapulse Corp.,* 626 F.2d at 1110–11. These exceptions to the facial restraints on judicial review set forth in the Act are generally derived from language in *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), establishing the scope of judicial review in labor arbitration cases,[10] and from dictum in *Wilko v. Swan,* 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953), recognizing "manifest disregard" as a possible ground for vacating an award.[11] Schlitz urges us to adopt these exceptions as the law of this circuit, and to vacate or modify the award under any or all of them.

 We need not decide, however, whether to adopt any of these exceptions since, under any one of them, the award must nevertheless be affirmed. Despite Schlitz's vigorous claims to the contrary, neither the award itself nor the record before us suggests that the arbitrators in any way manifestly disregarded the law in reaching their decision. In *Wilko,* the Court carefully distinguished an arbitrator's interpretation of the law, which is insulated from review, from an arbitrator's disregard of the law, which may open the door for judicial scrutiny. *Wilko,* 346 U.S. at 436–37, 74 S.Ct. at 187–88. Further, such disregard must "be made clearly to appear," *id.* at 436, 74 S.Ct. at 187, and may be found "when arbitrators understand and correctly state the law, but proceed to disregard the same," *San Martine*

*Compania de Navegacion,* 293 F.2d at 801; *see also Drayer v. Krasner,* 572 F.2d 348, 352 (2d Cir.1978) (relying on *San Martine*); *Office of Supply, Government of Republic of South Korea,* 469 F.2d at 379–80; *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1214–15 (2d Cir.1972). In the case before us, the arbitrators' decision does not clearly delineate the law applied, nor expound the reasoning and analysis used. Rather, the award presents, as the district court stated, "only a cursory discussion of what the arbitrators considered to be the key points underlying the award." It therefore cannot be said that it clearly appears that the arbitrators identified applicable law and proceeded to reach a contrary position in spite of it. Nor does the absence of express reasoning by the arbitrators support the conclusion that they disregarded the law. Arbitrators are not required to elaborate their reasoning supporting an award, *Enterprise Wheel,* 363 U.S. at 598, 80 S.Ct. at 1361, and to allow a court to conclude that it may substitute its own judgment for the arbitrator's whenever the arbitrator chooses not to explain the award would improperly subvert the proper functioning of the arbitral process, *see Sobel,* 469 F.2d at 1215 ("forcing arbitrators to explain their award * * * will unjustifiably diminish whatever efficiency the process now achieves").

Further, we are not persuaded that the award was fundamentally irrational or failed to draw its essence from the parties' agreement. Geocaris set forth several rational arguments both before the arbitra-

---

10. Justice Douglas described the limited scope of review in the labor arbitration context:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

11. The Court in *Wilko* noted first that "[p]ower to vacate an award is limited" but went on to say that

> [w]hile it may be true * * * that a failure of the arbitrators to decide in accordance with [applicable law] would "constitute grounds for vacating the award pursuant to section 10 of the Federal Arbitration Act," that failure would need to be made clearly to appear. * * [T]he interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation.

*Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953) (citations omitted).

tors and the courts, consistent with plausible interpretations of state law, justifying the award. We may not set an award aside simply because we might have interpreted the agreement differently or because the arbitrators erred in interpreting the law or in determining the facts. *See Shearson Hayden Stone, Inc.,* 653 F.2d at 312–13. Although this result may seem draconian, the rules of law limiting judicial review and the judicial process in the arbitration context are well established and the parties here, both sophisticated in the realms of business and law, can be presumed to have been well versed in the consequences of their decision to resolve their disputes in this manner.[12]

### Prejudgment Interest, Costs and Fees.

Schlitz lastly challenges the propriety of the district court's grant of post-award, prejudgment interest. The district court first concluded that federal law should be applied in considering a request for post-award prejudgment interest in a commercial arbitration action arising under the Act, and that the rate at which such interest is calculated should be determined by reference to the state statutory prejudgment interest rate. Neither party challenges those determinations and we will assume the correctness of these propositions for purposes of this appeal. Schlitz argues, however, that the district court abused its discretion in awarding prejudg-

**12.** Congress, through the Federal Arbitration Act, 9 U.S.C. §§ 1–14, as well as the Supreme Court have expressed increased approval of the use of arbitration rather than public adjudication through the courts. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* — U.S. ——, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985); *Dean Witter Reynolds, Inc. v. Byrd,* — U.S. ——, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985); *Prima Paint Corp. v. Flood & Conklin Mfg. Corp.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Undoubtedly, encouraging parties to use this form of alternative dispute resolution in commercial transactions is premised on the concern for easing rising case loads of the judiciary. Although arbitration often is said to provide simple, inexpensive and expeditious dispute resolution, recent cases before this court, and comments by counsel, as in this case, cast considerable doubt upon such adjectival praise. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,* 726 F.2d 1286 (8th Cir.1984) (district court may not grant injunctive relief pending arbitration). Parties resorting to arbitration in commercial situations are finding not only that the arbitration process is complex, expensive and time consuming, but the results of arbitration by private and untrained "judges" are distantly remote from the fair process procedurally followed and application of principled law found in the judicial process. Indeed, arbitration proceedings are intended to be insulated from "obstruction" from the courts. *Prima Paint Corp.,* 388 U.S. at 404, 87 S.Ct. at 1806.

Counsel for Schlitz has suggested to us that if the appellate courts are in effect unwilling to provide the same review of an arbitration proceeding as is given to a judgment of a district court, that commercial arbitration will cease and the courts will be further inundated with more litigation. Such threats should scare no one. Certainly it should not intimidate the fed-

eral judiciary who presently are doing all they can humanly do to maintain the judicial process as expeditious and just. Such comments need to be made however, for parties to the arbitration process to realize that it is not the most perfect alternative to adjudication. The present day penchant for arbitration may obscure for many parties who do not have the benefit of hindsight that the arbitration system is an inferior system of justice, structured without due process, rules of evidence, accountability of judgment and rules of law. The mere fact that arbitration is deemed highly successful in labor disputes overlooks the reason for its legitimacy: that it substitutes for labor's right to strike in a quid pro quo exchange with management. No one ever deemed arbitration successful in labor conflicts because of its superior brand of justice.

We write this response not to denigrate the use of arbitration in commercial transactions. We write only to provide notice that where arbitration is contemplated the courts are not equipped to provide the same judicial review given to structured judgments defined by procedural rules and legal principles. Parties should be aware that they get what they bargain for and that arbitration is far different from adjudication. Professor Owen Fiss provides the realism overlooked by many when he writes:

> Adjudication is more likely to do justice than conversation, mediation, arbitration, settlement, rent-a-judge, mini-trials, community moots or any other contrivance of ADR, precisely because it vests the power of the state in officials who act as trustees for the public, who are highly visible, and who are committed to reason. What we need at the moment is not another assault on this form of public power, whether from the periphery or the center, or whether inspired by religion or politics, but a renewed appreciation of all that it promises.

Fiss, *Out of Eden,* 94 Yale L.J. 1669, 1673 (1985).

ment interest under federal law. We cannot agree and affirm the award of prejudgment interest by the district court.

 As a general rule, prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of money which was legally due. *See Behlar v. Smith*, 719 F.2d 950, 954 (8th Cir.1983); *see also Short v. Central States, Southeast & Southwest Areas Pension Fund*, 729 F.2d 567, 576 (8th Cir.1984). Awarding prejudgment interest is intended to serve at least two purposes: to compensate prevailing parties for the true costs of money damages incurred, and, where liability and the amount of damages are fairly certain, to promote settlement and deter attempts to benefit unfairly from the inherent delays of litigation. *General Facilities, Inc. v. National Marine Service, Inc.*, 664 F.2d 672, 674 (8th Cir.1981). Thus, prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable. *Ohio River Co. v. Peavey Co.*, 731 F.2d 547, 549 (8th Cir.1984); *see also Cargill, Inc. v. Taylor Towing Service, Inc.*, 642 F.2d 239, 242 (8th Cir.1981) (same); *Blau v. Lehman*, 368 U.S. 403, 414, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962) (interest should be denied when its exaction would be inequitable). Such circumstances may include bad faith or dilatoriness by the claimant, or a claimant's assertion of frivolous claims. *See Cargill, Inc.*, 642 F.2d at 242.

 Schlitz first challenges the award of interest on the ground that the district court improperly weighed the equities. The district court awarded prejudgment interest after finding "evidence of no conduct which would render the assessment of prejudgment interest inequitable." We find no abuse of discretion by the district court in that respect. Schlitz claims that the district court failed to give proper weight to the fact that Schlitz did not intentionally sabotage Geocaris' market for its own ben-

efit and did not profit from its actions. The good or bad faith of the opposing party is not of dispositive significance, however. *See Hodgson v. American Can Co.*, 440 F.2d 916, 922 (8th Cir.1971) (interest awardable notwithstanding good faith of opposing party); *Lodges 743 and 1746 v. United Aircraft*, 534 F.2d 422, 447 (2d Cir.1975) (wrongdoing by opposing party not a prerequisite to awarding prejudgment interest). More important is the fact that Schlitz, the opposing party, has had the use of the money in the interim and has thereby been unjustly enriched at the expense of Geocaris. *United States v. Motor Vessel Gopher State*, 614 F.2d 1186, 1190 (8th Cir.1980); *see Short*, 729 F.2d at 576 (unjust enrichment important consideration).

 Schlitz also contends that Geocaris was dilatory in seeking judgment by filing its action to confirm in the "wrong" district and by failing to name certain entities as parties plaintiff. In our view, however, whatever delays were occasioned by these acts are simply those reasonably to be expected in the course of ordinary litigation. Thus, we find no error in the balancing of the equities by the district court.

 Schlitz further contends that the district court failed to make sufficiently detailed findings on the appropriateness of prejudgment interest, relying on our decision in *Kisco Co. v. Verson Allsteel Press Co.*, 738 F.2d 290, 296 (8th Cir.1984). This is not a case like *Kisco*, however, where the district court summarily assessed prejudgment interest with no discussion and no findings whatsoever. *Id.* at 296. Here, the district court carefully outlined and analyzed the operant legal principles in light of the facts, and we discern no necessity for more detailed findings that would justify a remand.

 · Finally, Schlitz maintains that awarding prejudgment interest would serve to discourage the use of arbitration by penalizing parties "for seeking judicial relief from questionable awards of arbitrators." We do not agree in the first place that an award of prejudgment interest ex-

acts a penalty. Schlitz has had the use of the damage award throughout the course of judicial proceedings, and payment of the interest thereon serves only to give Geocaris full compensation for its damages.

■ We do not go so far, however, to conclude that Schlitz' appeal was so frivolous as to support an award of attorney fees to Geocaris under Fed.R.App.P. 38. Such awards may be granted in the court's discretion "in the case of a frivolous appeal as a matter of justice to the appellee and as a penalty against the appellant." Fed.R. App.P. 38 advisory committee note. In this case, we are mindful of the fact that the merits of the jurisdictional and substantive questions raised here were not and are not entirely settled. Thus, we cannot conclude that this appeal was frivolously brought. Costs shall be awarded to the appellee as a matter of course, however. Fed.R.App.P. 39(a).

The amended judgment of the district court is affirmed.