**Joseph Daniel CARD, Petitioner,**

v.

**STRATTON OAKMONT, INC., Eric Blumen, Ira Albert Boshnack, and Irving Stitsky, Respondents.**

No. 3–95–1055.

United States District Court, D. Minnesota, Third Division.

July 8, 1996.

Gregory L. Wilmes, and Mark Briol, for Petitioner.

Thomas F. Nelson, and Martin P. Unger, for Respondents.

## ORDER

DAVIS, District Judge.

An arbitration panel awarded Petitioner Joseph Card, $1,552,200.86 in compensatory damages against Respondents on November 13, 1995. The claims asserted against Respondents considered by the arbitration panel included common law fraud, securities violations, RICO, negligence, breach of fiduciary duty, state anti-theft statutes and punitive damages. On December 6, 1995, Respondents made application to the arbitrators to correct alleged errors in the award. This application was denied on January 19, 1996. Petitioner now moves the Court for an order confirming the award, and for interest from the date of the award pursuant to the Federal Arbitration Act, 9 U.S.C. § 9 (FAA) and Minn.Stat. §§ 572.18 and .21. In response, Respondents move the Court for an order vacating the award on various grounds pursuant to Section 10 of the FAA, as well as on the basis of manifest disregard of law. For the reasons stated below, the Court hereby grants Petitioner's motion for confirmation of the arbitration award and denies Respondents' motion in its entirety.

## FACTS

In December 1993, Petitioner received a "cold call" from Respondent Ira Boshnack on behalf of Respondent Stratton Oakmont, Inc. ("Stratton Oakmont"). Thereafter, Petition-

er opened an account with Stratton Oakmont upon Stratton Oakmont's representation that it specialized in initial public offerings. *See,* Statement of Claim, Exh. 1 to Wilmes Aff. This relationship was short-lived, however. In September 1994, Petitioner commenced arbitration proceedings pursuant to the rules of the National Association of Securities Dealers, Inc. ("NASD") against Stratton Oakmont and the individual respondents. Petitioner made various claims of common law fraud, breach of fiduciary duty, negligence, RICO violations, and federal and state securities violations, such as excessive trading. Petitioner also requested punitive damages.

The parties each signed a Uniform Submission Agreement ("Submission Agreement"). Pursuant to the Submission Agreement, the parties agreed to submit the dispute to arbitration in accordance with NASD Code of Arbitration Procedure. Pursuant to paragraph 4 of the Agreement, the parties also agreed:

> to abide by and perform any award(s) rendered pursuant to this Submission Agreement and further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the undersigned parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

The arbitration panel that presided over Petitioner's claims consisted of three members, who together have over 50 years of experience in the securities industry: Edward Oliver, Jacque Foust and James Lundberg. Mr. Oliver is a branch manager for Washington Square Securities, and a Minnesota state senator. Mr. Oliver has over 35 years of experience in the securities industry. Mr. Foust previously worked for Paine-Webber, and is currently teaching ethics and business courses at the University of Wisconsin. The panel chair, Mr. Lundberg, is a lawyer with two years experience in the brokerage industry, experience as a neutral arbitrator and mediator for the AAA, NASD, NYSE, National Futures Exchange, the Fed-

eral Mediation and Conciliation Service and the National Mediation Board.

The arbitration trial was held on August 2–4 and 14–16 and October 9–13, 1995. On November 13, 1995, the panel issued its award, which provides in relevant part:

> Respondents Stratton Oakmont, Inc., Eric Blumen, Irving Stitsky, and Ira A. Boshnack are jointly and severally liable and shall pay to Claimant, Joseph D. Card compensatory damages in the amount of One Million Five Hundred Fifty Two Thousand Two Hundred Dollars and Eighty Six Cents ($1,552,200.86).

Respondents have refused to abide by and perform the award. It is Respondents' position that the arbitration award should be vacated because the panel was guilty of misconduct in refusing to postpone hearing dates, there was evident partiality by the panel, and because the panel exceeded their powers under Title 9 U.S.C. § 10(d) by acting in manifest disregard of the law and in issuing an award which the facts do not support.

**STANDARD OF REVIEW**

 The FAA was originally enacted in 1925 for the purpose of "revers[ing] the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts." *Gammaro v. Thorp Consumer Discount Company,* 15 F.3d 93, 95 (8th Cir.94) (*citing, Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991). "Its provisions manifest a 'liberal federal policy favoring arbitration agreements.'" *Id.* (citations omitted).

 In reviewing arbitral awards, the court is limited to determining " 'whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" *Remmey v. PaineWebber, Inc.,* 32 F.3d 143, 146 (4th Cir.1994) *cert. denied,* ─── U.S. ───, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995) (citations omitted). "Courts are not free to overturn an arbitral result because they would have reached a different conclusion if presented with the same facts." *Id.* The arbitrators are to be given maximum deference.

*ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1462 (10th Cir.1995).

■ Section 9 of the FAA, as well as Minn.Stat. § 572.18, provides that a party to an arbitration proceeding may apply to the court for an order confirming the award. A proceeding pursuant to Section 9 is intended to be summary and confirmation should only be denied if the arbitration award has been corrected, vacated or modified in accordance with the FAA. *Taylor v. Nelson,* 788 F.2d 220, 225 (4th Cir.1986). *See also,* Minn.Stat. § 572.18.

Section 10 of the FAA provides specific grounds which would allow this Court to vacate an arbitrator's award:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) Where the award was procured by corruption, fraud or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

In addition to the grounds set forth in the statute, Respondents also argue that an award may also be vacated on the grounds the panel acted in manifest disregard for the law. Petitioner argues that "manifest disregard of the law" is an improper basis upon which to vacate the award as it has not been adopted by the Eighth Circuit. A review of the relevant Eighth Circuit opinions supports Petitioner's contention that "manifest disregard of the law" has not been specifically adopted. It cannot be said, however, that upon proper facts, the Eighth Circuit has, or would, reject such additional grounds upon which to vacate an award apart from those provided by statute.

In *Stroh Container Co. v. Delphi Industries, Inc.,* 783 F.2d 743, 749 (8th Cir.1986) *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986) the Eighth Circuit recognized that some courts deem the grounds provided in Section 10 of the FAA as the exclusive grounds for vacating an award. *Id.* (citing, *Shearson Hayden Stone, Inc. v. Liang,* 653 F.2d 310, 312 (7th Cir.1981); *Diapulse Corp. of America v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2nd Cir.1980)). The court also noted, however, that other courts have recognized other grounds for vacating an award such as manifest disregard of the law, irrationality or contravention of a deeply rooted public policy. *Stroh Container,* 783 F.2d at 749–50 (citations omitted). Given the facts before the court in *Stroh Container,* however, the court declined to adopt such additional grounds for vacating an arbitration award as it was unnecessary in reaching a determination of the case.

In *Marshall v. Green Giant Co.,* 942 F.2d 539, 550 (8th Cir.1991), the court again refrained from deciding whether to adopt "manifest disregard of the law" as a basis for vacating an arbitration award because the facts established the arbitrator did not manifest a disregard for the law in establishing the award.

In *DVC–JPW Investors v. Gershman,* 5 F.3d 1172 (8th Cir.1993) the Eighth Circuit provided that the district court may only vacate an arbitrator's award under the narrow set of circumstances set forth in the Act. In *DVC–JPW,* however, the court relied on *Stroh Container, supra* which, as previously discussed, acknowledged that additional bases upon which to vacate an arbitration award have been recognized. This may explain why in a seemingly contradictory opinion, the court in *Gammaro,* 15 F.3d at 96, provided that judicial review of arbitration awards is narrowly limited to the grounds provided in Sections 10 and 11 of the Act, or to whatever additional review the court may deem appropriate, citing again to *Stroh Container, supra.*

■ While it cannot be said that the Eighth Circuit has specifically adopted manifest disregard of the law as a basis upon which to vacate an arbitration award, this Court believes that upon proper facts such basis may be deemed appropriately applied. Unfortunately for the Respondents, however, this case does not present such facts. As will be discussed in greater detail below, the Court finds Respondents have failed to establish the arbitrators acted in manifest disregard of law. Furthermore, pursuant to the narrow standard of review of arbitral decisions, the Court finds that Respondents have failed to establish that any of the grounds provided in Section 10 of the FAA exists to warrant vacation of the award.

## ANALYSIS

1. Section 10(a)(3) provides vacatur is appropriate where the arbitrators are guilty of misconduct in refusing to postpone a hearing upon sufficient cause shown or any other misbehavior by which the rights of parties have been prejudiced. Respondents argue that the arbitrators in this case violated this section when refusing to postpone the August 14–16 hearing dates.

The hearings in this matter took place over three different periods of time, Aug. 2–4, 1995, Aug. 14–16, 1995 and October 9–13, 1995. Respondents argue that during the first segment, it became apparent that the hearing would more than likely continue and that the arbitrators unilaterally announced the hearings would continue on Aug. 14, 1995.

Respondents assert that their counsel had conflicting NASD matters on Aug. 14 and informed the arbitrators of this fact, and that the arbitrators stated the Card matter would be continued to Aug. 14, 1995 contingent upon the NASD staff postponing the conflicts. Respondents next assert that they thereafter heard nothing from NASD as to whether the Card arbitration would in fact continue on August 14, 1995, leaving Respondent's counsel in the position of not knowing which matter to prepare for. Respondents have provided the Court a detailed summation of their attempts to determine from NASD if the Card arbitration would take place on August 14, 1995 or if the conflicting NASD obligations of Respondent's counsel had in fact been postponed. Respondents allege that Petitioner's counsel received a Hearing Notice from NASD on August 9, 1995 which stated that the Card arbitration would continue on August 14, 1995, but that they never received such notice until August 10, when Petitioner's counsel faxed a copy to Respondent. Because they were not notified of the fact that the Card arbitration would continue until late Friday afternoon, Respondent's argued they were severely prejudiced in that they did not have the proper time to prepare. Finally Respondents argue that prior to the commencement of the hearing on August 14, 1995, Respondent placed on the record his objections to the matter proceeding that day, and that their request for an adjournment was denied by the arbitration panel.

Petitioner, on the other hand, asserts that Respondents' counsel never requested a postponement, that they received fair notice, and that they ultimately received a seven week postponement when the hearing was continued to October 9, 1995.

■ A court's review of an arbitrator's refusal to grant a postponement is limited to determining whether the refusal to postpone was the result of misconduct. *Agarwal v. Agarwal,* 775 F.Supp. 588, 590 (E.D.N.Y. 1991) *aff'd* 969 F.2d 1041 (2nd Cir.1992). This Court should also keep in mind that an arbitrator has wide discretion to grant or deny a request for adjournment. *Id.* If there is any reasonable basis for the arbitrator's decision not to postpone a hearing, the court should not intervene. *DVC–JPW,* 5 F.3d at 1174.

■ A review of the transcript of the proceedings leads this Court to the conclusion that Respondent did, in fact, receive fair notice that the hearing would take place on August 14–16, providing a reasonable basis for the decision not to postpone such hearing dates.

On August 3, 1995, Chairman Lundberg stated the following:

... The panel is going to make a request right now of Mr. Unger [Respondents'

counsel]. The week of August 13th is available for the panel. What we would like to do procedurally is this: If you have other cases that are schedule to be on AST, etc., please provide us with notice of those documents or if there's a court notice that you have that would take priority or precedence of over this case. It is our desire to continue this hearing after tomorrow through the week of 14th and we require those notices contact of the NASD during the break. According to section 26 of the code, we have discretion in terms of scheduling ??? It is our understanding the policy of the NASD is to address cases on an age basis. We will honor and respect ??? those types of scheduling difficulties as are necessary. However, we would like you to contact to give you the opportunity here to contact your office and obtain the scheduling notices. We will if necessary arrange with the NASD to have, if necessary, a case that may not be as old as this case bumped in order to accomplish the hearing of this case.

Unger: We have one case that week and one pre-hearing conference in another case that week, both of which will have to be adjourned, plus

Chairman: OK.

Unger: The other thing is that other NASD thing that I don't think I'm going to be able to do.

Chairman: If you will arrange to have those things either set aside through your office or if we need to contact your office or if we need to contact on behalf of you I think we'll have to schedule if we need to contact the NASD we'll need to arrange that and see if that can be accomplished.

Unger: If we can do it I can do three days that week. I have other things to do Thursday and Friday and I can't—those things I can't get out of. If we can change the cases, which I think are the 15th—prehearing conference on the 14th and arbitration on the 15th—so we would have 3 days, you know, if we can get the NASD to change those we can give you three days.

Chairman: I think we can do that. If you have the notices if you can get the cover sheets on the _____.

Unger: I think that is being administered out of Chicago.

Chairman: We can ask Mr. Barlow to intercede on our behalf.

Unger: That's fine.
_____ for both days.

*　　*　　*　　*　　*　　*

Chairman: They will adjourn that week, and do three days that week. The fourteenth, fifteenth and sixteenth the parties be prepared to go into three sessions which will terminate at approximately 8:30 or 9:00 o'clock on Monday, Tuesday and Wednesday. Be prepared for very long sessions.

This last statement made by the Chairman contains unequivocal language that the Card arbitration would continue on August 14, 1995. There is no mention of contingencies. Rather, the Chairman stated "Be prepared to go into three sessions ..." The following day, August 4, 1995, Respondent's counsel, Mr. Unger, made a detailed prehearing statement on the record as to his objections to continuing the arbitration on August 14, for a variety of reasons. In response to Mr. Unger's statements, Chairman Lundberg responded:

Chairman: Okay. With regard to the issues that have been raised by counsel, one, the scheduling order is not going to be changed at this point.

At the end of the hearing on August 4, 1995, the following exchange occurred:

Chairman: This hearing is continued to August 14—

Unger: Assuming—I assume we'll get notice of that?

Chairman: Yes.

Unger: If they manage to make all of the arrangements that they're supposed to make.

Chairman: August 14th, 1995, unless the NASD notifies us of the impossibility of that and the site of the hearing will be noticed through the NASD. We'll see you gentlemen then.

The record does not support Respondent's assertion that they were notified the Card arbitration would continue only if they received notice that the conflicting matters had been postponed. To the contrary, the record clearly reflects that the parties were put on notice the Card arbitration would continue, unless they were notified by NASD that it would be impossible to do so. From this record, Respondents were to presume the Card arbitration would continue unless notified otherwise.

The fact that Respondents were given the opportunity, over five days in October 1995, to present their case and witnesses also weighs against a finding of misconduct on the part of the panel. In *Agarwal*, the court found the because the arbitrator had granted defendants a third day of hearing, two weeks after the initial dates, to allow defendants the opportunity to collect further testimony in support of their position weighed "very strongly against any finding of misconduct by the arbitrators." *Id.*, 775 F.Supp. at 591.

2. Respondents next assert that vacatur is warranted pursuant to Section 10(a)(2) where there is evident partiality by the arbitrators. The claim of partiality is based on three grounds: the panel's denial of Respondent's challenge for cause against the appointment of Arbitrator Edward Oliver; the panel's acceptance of evidence concerning SEC regulatory action against Respondents; and a malfunction in the tape recording machine.

A. Arbitrator Oliver

■ Respondents objected to the appointment of Edward Oliver to the arbitration panel assigned to hear the Petitioner's claims on the basis that Mr. Oliver was a Minnesota State Senator, and that they believed Mr. Card may reside in Mr. Oliver's district. On this basis, Respondents asked that Mr. Oliver be removed from the panel. Petitioner responds that he does not live in Mr. Oliver's legislative district, nor does have any type of relationship, personally, socially, professionally or financially with Mr. Oliver.

■ "To set aside an award for arbitration partiality, '[t]he interest or bias ... must be direct, definite and capable of demonstration rather than remote, uncertain or speculative.'" *Health Services Management Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir. 1992). Respondent's have put forth no evidence to support their claim that Mr. Oliver was biased. Accordingly, such claim will not warrant vacatur of the award.

B. SEC Proceedings

■ In his Statement of Claim, Petitioner made references to a civil complaint for Preliminary and Permanent Injunction filed by the SEC against Stratton Oakmont, the settlement of said complaint, references to an SEC administrative proceeding and prior claims and settlements involving Respondent Irving Stitsky. Respondents assert that consideration of these SEC proceedings in the Card arbitration, by the panel, evidences partiality and a manifest disregard of the law. In support of this argument, Respondents cite this Court to *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2nd Cir.1976) and *Beck v. Cantor Fitzgerald & Co., Inc.*, 621 F.Supp. 1547 (D.C.Ill 1985). In both of these cases, the courts granted motions to strike from complaints filed with the district court, references to SEC consent judgments or SEC complaints pursuant to the applicable Rules of Evidence. Petitioner argues, and this Court agrees, that reliance on *Lipsky* or *Beck* is misplaced as the Federal Rules of Evidence do not apply to arbitration proceedings.

In *Bowles Financial Group v. Stifel, Nicolaus & Co.*, 22 F.3d 1010 (10th Cir.1994), the issue before the court was whether an arbitration award must be vacated on the basis that counsel for one of the parties had repeatedly submitted to the arbitrators an offer of settlement made earlier by the opposing party.

> We commence by discussing what arbitration is and what it is not. Arbitration is a creature born of a contract between the parties who are desirous of avoiding litigation in a court of law. Arbitration requires the parties agree to rules of arbitration. Frequently, rules of arbitration specifically exclude the application of judicial rules of

evidence and, instead, the arbitrators determine the materiality and relevance of all evidence offered. Arbitrators are not judges of a court nor are they subject to the general superintending power of a court. Arbitration provides neither the procedural protections nor the assurance of the proper application of substantive law offered by the judicial system. Those who choose to resolve a dispute by arbitration can expect no more than they have agreed. One choosing arbitration should not expect the full panoply of procedural and substantive protection offered by a court of law. In short, "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the [perceived] simplicity, informality, and expedition of arbitration.'".

*Bowles,* 22 F.3d at 1011 (citations omitted). In deciding whether communicating settlement offers to the arbitrators was grounds for vacating an award, the court held that such conduct fell within the broad procedural rules of arbitration and that the court did not have the power to draft a contract between the parties or the power to impose judicial rules of evidence on an arbitration proceeding. *Id.,* at 1013.

In the present case, the Submission Agreements entered into by the parties provided that arbitration would proceed in accordance with the Constitution, By–Laws, Rules, Regulations and/or Code of Arbitration Procedure of the sponsoring organization, NASD. Section 34 of the Code of Arbitration Procedure, which governs NASD arbitration proceedings, provides the following:

> Evidence. The arbitrators shall determine the materiality and relevance of any evidence proffered and shall not be bound by the rules governing the admissibility of evidence.

Section 35 provides:

> Interpretations of Provisions of Code and Enforcement of Arbitrator Rulings. The arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code and to take appropriate action to obtain compliance with any ruling by the arbitrators. Such interpretations and actions to obtain compliance shall be final and binding upon the parties.

These sections make clear that the panel had the authority and discretion to determine materiality and relevance without reference to the judicial rules of evidence and that the decision to accept such evidence by the panel is final and binding upon Respondents. Accordingly, this Court has no power to judicially impose its rules of evidence on this arbitration proceeding. *Bowles,* at 1013.

### C. Malfunction of Tape Recorder

Respondents also argue that the panel improperly failed to make a tape recording of Petitioner's cross examination. Section 37 of the Code of Arbitration Procedure provides:

> A verbatim record by stenographic reporter or a tape recording of all arbitration hearings shall be kept. If a party or parties to a dispute elect to have the record transcribed, the costs of such transcription shall be borne by the party or parties making the request unless the arbitrators direct otherwise. The arbitrators may also direct that the record be transcribed. If the record is transcribed at the request of any party, a copy shall be provided to the arbitrators.

Respondents assert that a verbatim record of the arbitration hearings was kept by tape recording, except for a significant portion of the hearing—Petitioner's cross-examination. Respondents argue that failure to record Petitioner's cross-examination constitutes misbehavior by the panel and further evidences the prejudice to Respondents as a result of the panel's numerous misdeeds.

Respondents do not point to any authority supporting their argument that an arbitration award may be vacated because a verbatim record of a portion of an arbitration proceeding was not made. There is no evidence before the Court that the panel purposefully orchestrated the failure of the tape recorder while Petitioner was cross-examined. Respondents argue, however, that the particular portion not recorded is so critical to its ability to have the award vacated that it clearly establishes partiality. Assuming Respondent could point to portions of Petitioner's cross-examination that completely con-

tradict his claims of excessive trading, such evidence could not be used to vacate the award as it is not proper for this Court to revisit the arguments and evidence presented to the arbitrators. *See, Remmey,* 32 F.3d at 151. In reviewing an arbitration award, this Court must focus on whether the arbitral process itself was flawed, not the result. *Id.*

▇▇▇▇ Furthermore, even though Section 37 of the Code of Arbitration Procedure may have been by its literal terms violated by the panel, it does not follow that the award must be nullified as the Code does not have the force of law. *Merit Ins. Co. v. Leatherby,* 714 F.2d 673, 680 (7th Cir.1983) *cert. denied,* 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983). Respondents must point to a statutory violation to warrant vacation of an arbitral award, not a violation of the Code of Arbitration Procedure.

▇▇▇ 3. Respondents argue that vacatur is warranted under Section 10(a)(4) because the panel exceeded its power and imperfectly executed those powers by acting in manifest disregard of the law and by issuing an award that is not supported by the facts.

> Manifest disregard of the law exists when the arbitrator commits an error that was "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing principle but decides to ignore or pay no attention to it." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2nd Cir.1986) "There must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it." *O.R. Securities, v. Professional Planning Assoc. Inc.,* 857 F.2d 742, 747 (11th Cir.1988).

*Green Giant,* 942 F.2d at 550. Manifest disregard means more than error or misunderstanding with respect to the law. *Bobker,* 808 F.2d at 933.

In *Green Giant,* the court did not find manifest disregard of the law occurred where Green Giant failed to establish the arbitrators recognized and ignored a particular area of law. *Id.,* at 550. In *Raiford v. Merrill Lynch, Pierce, Fenner Smith,* 903 F.2d 1410, 1413 (11th Cir.1990), the court noted that it was difficult to make a finding of manifest error of law where the award at issue did not include an explanation regarding the award.

Respondents assert that the arbitrators rendered its award in manifest disregard of the law and which was irrational in light of the facts as presented by Petitioner. Respondents assert that the law and facts do not support a finding of unauthorized trading because Petitioner received written confirmations and monthly statements regarding these transactions every month, and never submitted a written objection. Based on such evidence, Respondents argue Petitioner is barred as a matter of law from alleging damages as a result of the purported unauthorized transactions. Respondents also argue the law or facts do not support a finding of churning, as Petitioner was an experienced trader, not an investor.

▇▇▇ Petitioner responds that Respondents cannot make this showing because the law was thoroughly briefed for the arbitration panel and hotly contested. Under these circumstances, Respondents cannot establish an error of law so obvious that it would be readily and instantly perceived. Petitioner also argues that he made the following claims against Respondents—failing to tell Petitioner the whole truth about the stock it recommended, making misrepresentations of material fact concerning stock it recommended, unauthorized trading on Petitioner's account, employing unlawful sales practices in violation of NASD and Department of Commerce rules, violating supervision and customer protection rules, engaging in market manipulations and attempted market manipulations, churning the account, exercising discretion in Petitioner's account without written consent, and other negligent, imprudent, reckless, willful and unlawful conduct. Given the fact that the panel did not provide an explanation as to its award, Petitioner argues that to succeed in vacating the award, Respondents would have to refute every theory that could support the damage award, not just the unauthorized trading or churning claims. Finally, Petitioner argues that because Respon-

dents did not provide the Court the full record of the arbitration hearing, this Court could not fully evaluate a manifest disregard of the law claim.

The Court finds that Respondents have not established the panel acted with manifest disregard of the law in issuing its award to Petitioner. First of all, the arbitration award at issue in this case does not provide an explanation. Thus, from the face of the award it is impossible to know the basis by which the award was rendered given the fact that the panel was faced with determining numerous claims based upon eleven days of hearings in which numerous witnesses testified and numerous documents were presented. Furthermore, Respondents focus only on the claims of unauthorized trading and churning. But as stated above, Respondents cannot establish the award was based solely on those claims. Finally, as is evidenced by the briefs submitted to the panel, the issues involved in this case were hotly contested. Under these circumstances, Respondents have failed to establish that the panel was aware of a particular legal standard, which they ignored in fashioning the award.

■ 4. Respondents have also moved to vacate the award pursuant to Section 10(a)(4) on the basis the panel failed to properly delineate damages between the Respondents. Respondents also argue that Petitioner only requested $1,231,074.50 in compensatory damages, but was awarded $1,552,200.86. As to the amount of damages awarded, Petitioner notes that in his Complaint, Petitioner states "[t]hese are our preliminary damage calculations. We have not yet completed our damage analysis and reserve the right to provide updated damage calculations to the arbitrators at trial." ¶ 55, Statement of Claim. Petitioner states that he presented updated damage calculations before the panel. Accordingly, the Court will not vacate the award based on the amount of damages awarded.

In the award, the panel held all Respondents jointly and severally liable for the compensatory damage award. Respondents argue that the periods of responsibility for the account are clearly defined and that fairness and justice require that Respondents not be held liable for damages for which they were not responsible. Petitioners assert, inter alia, that joint and several liability is proper because Respondents Blumen and Boshnack were partners (they split commissions), and Stitsky was a part owner and principal at Stratton Oakmont and supervised the other two.

■ Section 10(a)(4) allows the Court to vacate an arbitral award "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Respondents have not provided any authority which supports its argument that the imposition of joint and several liability establishes a violation of Section 10(a)(4) and the Court declines to so find, given the narrow scope of review applied to an arbitral award.

■ Based on the above, the Court finds no grounds upon which the award issued in favor of Petitioner can be vacated. Petitioner has asked that this Court also award him interest on the award, at the legal rate, from the date of the award. The NASD Code of Arbitration Procedure, Rule 41(h), specifically provides that all awards that are the subject of a motion to vacate, which is denied, shall include interest at the legal rate from the date of the award. Because Respondents' motion to vacate will be denied, Respondents shall be responsible for interest on the award as well.

Finally, Petitioner requests an award of attorney's fees incurred in opposing Respondents' motion to vacate. Petitioner asks that this Court grant such fees consistent with other courts who have granted attorney's fees when a party has refused to abide by an award of an arbitrator without justification, *International Union of Dist. 50, United Mine Workers of America v. Bowman Transp., Inc.*, 421 F.2d 934, 935 (5th Cir. 1970), or if the opponent's suit is frivolous. *National Wrecking v. IBT, Local 731*, 990 F.2d 957, 963, n. 4 (7th Cir.1993). Based on the arguments of counsel, together with the record before this Court, the Court will not make a finding that Respondents' motion to vacate was without justification or frivolous.

The motion for attorney's fees is therefore denied.

Accordingly, IT IS HEREBY ORDERED:

1. That Petitioner's Motion for Confirmation of the Arbitration Award is GRANTED. Judgment shall be entered in favor of Petitioner and against Respondents, jointly and severally, in the amount of $1,550,200.86. Such judgment shall bear interest at the rate of 6%, commencing on November 13, 1995.

2. That Petitioner's Motion for Attorney's Fees is DENIED.

3. That Respondents' Motion to Vacate the Arbitration Award is DENIED.

Let Judgment be Entered Accordingly.